**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 20, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

KEITH EARL ROBINSON,

Petitioner - Appellant,

v.

KAMERON HARVANEK,

Respondent - Appellee.

No. 23-5036
(D.C. No. 4:20-CV-00086-GKF-CDL)
(N.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Keith Earl Robinson appeals the district court's order denying his 28 U.S.C. § 2254 habeas petition. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we affirm the denial of habeas relief.

## I. BACKGROUND

On June 27, 2013, around 12:40 p.m., a man kicked in the back door of the Bartlesville, Oklahoma house Renee White shared with her elderly parents. When

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the man walked through the back door, he encountered Ms. White, who screamed and told him to leave. After several seconds, the man ran away. The man had coarse hair and wore a white sleeveless shirt and black shorts. About two weeks later, Detective Mellen showed Ms. White a six-person photo lineup, and she identified Mr. Robinson as the man who had entered her home. Mr. Robinson lived in a house that was just over a block away from Ms. White's home; he lived with his fiancée, Darian Grayson, their young child, and his mother and stepfather, Tammy and Eddie Bridges. Mr. Robinson's grandmother, Jean Sanders, lived in the house next door.

Oklahoma charged Mr. Robinson with first-degree burglary and alleged that he had committed the crime after former conviction of two or more felonies. At trial, five witnesses testified on Mr. Robinson's behalf. Ms. Sanders testified that at midday on June 27, a man wearing a white shirt and dark shorts tried to break into her back gate and that Mr. Robinson, who was installing an air conditioner next door, came and ran the man off. She further testified it would have been impossible for Mr. Robinson to leave for ten minutes that day without her noticing.

Mrs. Bridges testified that on June 27, Mr. Robinson stayed home from work and did not leave the house that day because he was installing an air-conditioning unit. On cross-examination, in response to questioning about Mr. Robinson's hairstyles, Mrs. Bridges mentioned that Mr. Robinson had been in jail and a halfway house. She further testified that she had a receipt showing the air-conditioning unit was purchased on June 27 but that no one asked her to bring the receipt to court.

2

Mr. Bridges testified that he and Mr. Robinson were installing an air-conditioning unit all day on June 27. On cross-examination, Mr. Bridges testified that Mr. Robinson never left his sight that day, because Mr. Robinson does not close the door when he uses the restroom. He further testified that he was not aware of Mr. Robinson confronting anyone in Ms. Sanders' backyard that day, but that he thought Mrs. Bridges and Ms. Sanders ran someone off.

Ms. Grayson testified that Mr. Robinson was home installing an air conditioner all day on June 27 and that she was not aware that he went next door to Ms. Sanders' house that day. On cross-examination, Ms. Grayson testified that she did not think Mr. Robinson was involved in the ruckus in Ms. Sanders' backyard that day, but that he might have gone next door while she was otherwise occupied. Unprompted, Ms. Grayson mentioned that Mr. Robinson had been in prison.

Lastly, Tammie Chidester, a friend of Mr. Robinson's family who lived in the same neighborhood, testified that on June 27, she saw an acquaintance, Charles Fouts Jr., running down the alley in a white tank top and black shorts. Ms. Chidester suspected that Mr. Fouts was involved in the burglary of Ms. White's home. On cross-examination, Ms. Chidester was confronted with evidence that she was in jail until 1:35 p.m. on June 27, yet she maintained that she saw Mr. Fouts running in the alley that afternoon.

Trial counsel did not request an instruction on the defense of alibi or an instruction on any lesser-included offenses.

3

An Oklahoma state jury convicted Mr. Robinson of first-degree burglary after former conviction of two or more felonies. Based on the jury's recommendation, the court sentenced Mr. Robinson to twenty-three years in prison. After his direct appeal and state post-conviction proceedings were unsuccessful, Mr. Robinson filed a § 2254 habeas petition in federal court claiming, inter alia, that his trial counsel provided constitutionally ineffective assistance in violation of the Sixth Amendment. The district court denied relief but granted a certificate of appealability (COA) as to his Sixth-Amendment claim, which is the only claim he now pursues on appeal.

## II. STANDARD OF REVIEW

In determining whether a federal district court erred in denying habeas relief, "we review its legal analysis de novo and its factual findings for clear error." *Wood v. Carpenter*, 907 F.3d 1279, 1288–89 (10th Cir. 2018). "But in proceedings under [§ 2254], the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) significantly limits our review." *Id.* at 1289.

AEDPA provides that when a claim has been adjudicated on the merits in state court, a federal court can grant habeas relief only if the petitioner establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

"A state-court decision is only contrary to clearly established federal law if it arrives at a conclusion opposite to that reached by the Supreme Court, or decides a

case differently than the Court on a set of materially indistinguishable facts." *Wood*, 907 F.3d at 1289 (internal quotation marks omitted). And "a state-court decision unreasonably determines the facts if the state court plainly misapprehended or misstated the record in making its findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim." *Id.* (brackets and internal quotation marks omitted).

### III. ANALYSIS

Mr. Robinson claimed in his state post-conviction motion and his federal habeas petition that he was deprived of his Sixth Amendment right to the effective assistance of counsel when his trial counsel: (1) demonstrated general ineptitude during his examination of several witnesses; (2) failed to object to the trial judge's participation in investigating and impeaching Ms. Chidester, and failed to adequately investigate and interview Ms. Chidester and to prepare her and other defense witnesses for trial; and (3) failed to request jury instructions on the defense of alibi and the lesser-included offense of breaking and entering without permission.

The Sixth Amendment guarantees "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (internal quotation marks omitted). Under *Strickland*, a defendant who claims ineffective assistance must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) that any deficiency was "prejudicial to the defense." *Id.* at 688, 692. "The benchmark for judging any claim of ineffectiveness must be whether

5

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

"When a habeas petitioner alleges ineffective assistance of counsel, deference exists both in the underlying constitutional test (*Strickland*) and the AEDPA's standard for habeas relief, creating a doubly deferential judicial review." *Harris v. Sharp*, 941 F.3d 962, 973 (10th Cir. 2019) (internal quotation marks omitted). "Under this double deference, [courts] consider whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 974 (emphasis and internal quotation marks omitted). The habeas petitioner must therefore show "that all fairminded jurists would conclude that the [state court's] ruling" on the deficient-performance prong "was unreasonable," not just "mistaken or wrong." *Honie v. Powell*, 58 F.4th 1173, 1189 (10th Cir.) (internal quotation marks omitted), *cert. denied*, 144 S. Ct. 504 (2023).

"The petitioner must show not only a deficiency in the representation but also prejudice." *Harris*, 941 F.3d at 974. "For prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted).

The Oklahoma Court of Criminal Appeals (OCCA) assessed Mr. Robinson's ineffective assistance of counsel claims and determined he had not satisfied the deficient performance prong or the prejudice prong under *Strickland*. The OCCA did not explicitly address all of Mr. Robinson's ineffective assistance claims because it

determined that "[o]nly [Mr. Robinson]'s challenge to trial counsel's handling of Tammie Chidester's testimony requires extended discussion." Aplt. App. at 13. The OCCA noted that Mr. Robinson did not argue that his counsel was ineffective for presenting Ms. Chidester as a witness and that, even if he had made that argument, he could not show *Strickland* prejudice in light of Ms. White's "unequivocal identification testimony" and "the dubious alibi testimony from [Mr. Robinson]'s four family members." *Id.* at 13–14. The OCCA determined "this is not a case where Tammie Chidester's discredited testimony undermined an otherwise viable alibi defense. Rather, the alibi testimony from [Mr. Robinson]'s relatives was largely discredited before Chidester ever took the stand." *Id.* at 14.

In support, the OCCA noted that: (1) the prosecution had established that the alibi witnesses Mr. Robinson presented were "inherently biased," and "their collective testimony was inconsistent on material issues," *id.*; (2) even crediting the testimony that Mr. Robinson was helping install an air conditioner on the day of the burglary, his "family members all agreed that he was approximately a block and a half (a short walk) away from the victim's house when the burglary occurred" thus affording him "more than sufficient opportunity to commit the crime," *id.* at 14–15; (3) Mr. Bridges' testimony that he was unaware of Mr. Robinson ever shutting the door to use the restroom, and Mrs. Bridges' failure to bring the air conditioner receipt "served to cast suspicion on the testimony of [Mr. Robinson]'s family members," *id.* at 15; and (4) the "totality of the family members' testimony allowed the jury to infer

7

that their testimony was manufactured to help [Mr. Robinson] beat the burglary charge," *id.* at 15–16.

Before the district court, Mr. Robinson argued the OCCA only focused its analysis on Ms. Chidester's testimony, improperly ignoring the remainder of his ineffective assistance claims. He also argued the OCCA unreasonably applied *Strickland*'s prejudice prong.

The district court assessed the allegations of ineffectiveness not discussed by the OCCA to determine whether reasonable arguments could have supported the OCCA's decision. The court first analyzed Mr. Robinson's claim that his counsel demonstrated general ineptitude during his examination of several witnesses. After reviewing the trial transcript, the court determined that trial counsel performed deficiently by not adequately preparing defense witnesses to avoid mentioning Mr. Robinson's criminal history. Relatedly, the court found that "it was only the prosecutor's timely objection that prevented trial counsel from violating his own motion in limine by eliciting testimony from Detective Mellen that would have revealed evidence of Robinson's prior incarceration." Aplt. App. at 162. Thus, the court found that it may have been objectively unreasonable for the OCCA to determine that counsel provided reasonably competent performance regarding his examination of witnesses at trial.

Next, the district court analyzed Mr. Robinson's claim that his counsel failed to request jury instructions on the defense of alibi and on the lesser-included offense of breaking and entering without permission. Regarding the alibi instruction, the

8

court noted that the evidence presented at trial showed that Mr. Robinson was only a short walk away from Ms. White's house at the time of the burglary and Oklahoma law only permits an alibi instruction when the evidence establishes the accused was too far away or otherwise not reasonably able to reach the crime scene at the time of the offense. The court determined that, "[e]ven assuming trial counsel should have requested an alibi instruction, the trial court necessarily would have rejected that request because Robinson was not entitled to that instruction under state law." *Id.* at 166. The court likewise determined that Mr. Robinson was not entitled to a lesser-included offense instruction because he proclaimed his innocence by presenting an alibi defense at trial, and under Oklahoma law, a defendant who defends against a charge by proclaiming innocence is not entitled to lesser-included offense instructions. The district court therefore found that reasonable arguments supported the OCCA's decision.

Finally, the district court reviewed whether the OCCA reasonably applied *Strickland*'s prejudice prong and determined that it had because fairminded jurists could disagree about whether Mr. Robinson had demonstrated prejudice.

Before this court, Mr. Robinson contends that the OCCA's decision is not entitled to deference because it did not explicitly analyze each of his ineffective-assistance claims. However, a state court is not required to provide an opinion explaining its reasoning to receive deference for adjudicating a claim on the merits. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011). There is a presumption that the state court has adjudicated a claim on the merits and this presumption applies

9

"when a state-court opinion addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013). Here, the OCCA adjudicated Mr. Robinson's ineffective-assistance-of-counsel claim on the merits even though it noted that only one of his arguments "require[d] extended discussion." Aplt. App. at 13.

Next, Mr. Robinson argues that because the district court determined it may have been objectively unreasonable for the OCCA to find that counsel provided reasonably competent performance regarding his examination of witnesses at trial, the district court "should have concluded that prejudice ensued as a result of Counsel's deficient performance." Aplt. Opening Br. at 20–21. This argument is unavailing. "The petitioner must show not only a deficiency in the representation but also prejudice." *Harris*, 941 F.3d at 974. "Unless a defendant makes *both* showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687 (emphasis added).

Even assuming that counsel's performance at trial was deficient, Mr. Robinson has not shown that he was prejudiced by his counsel's performance. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Here, Mr. Robinson makes conclusory assertions that he was prejudiced but he has not shown that the result of his proceedings would have been different absent his

10

counsel's unprofessional errors.  He likewise fails to show that all fairminded jurists would conclude that the OCCA's ruling was unreasonable.  We therefore uphold the district court's denial of habeas relief.

### III.  CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Bobby R. Baldock
Circuit Judge